# UNITED STATES DISTRICT COURT
## for the
## Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 21, 2019

SEAN F. McAVOY, CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) |
| v. | ) Case No. 4:19-mj-07023-MKD |
| ROBERTO FLORES, AND<br>MICHELE MAGANA | )<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the 20th day of March 2019, in the county of Benton in the Eastern District of Washington, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(C) | Possession with Intent to Distribute Fentanyl |

This complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*
TFO Thomas Orth, Drug Enforcement Administration

_____
*Printed name and title*

☐ Sworn to before me and signed in my presence.
☒ Sworn to telephonically and signed electronically.

Date: 3/21/2019

_____
*Judge's signature*
Mary K. Dimke, United States Magistrate Judge

City and state: Yakima, Washington

_____
*Printed name and title*

P40306jm.SLA

AUSA: SAV

*In re Affidavit in Support of Criminal Complaint as to Roberto FLORES and Michelle MAGANA.*

| | |
|---|---|
| STATE OF WASHINGTON | ) |
| | :: ss |
| Benton County | ) |

## AFFIDAVIT

I, Thomas Orth, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AFFIANT TRAINING AND EXPERIENCE

1.      Your affiant has been employed as a law enforcement officer since 2006. Your affiant was first employed in this capacity as a Police Officer by the City of Mabton. Your affiant completed the Washington State Basic Law Enforcement Academy in 2006. In June 2009, your affiant was hired by the City of Sunnyside as a Police Officer. During his employment at the Sunnyside Police Department, your affiant has attended several hundred hours of training, both hands-on and practical experience in criminal investigations, interview and interrogation techniques, drug identification, and classification, crime scene investigation, and drug interdiction. Your affiant also served as a member of the Sunnyside Gang Task Force, and Special Weapons and Tactics (SWAT) team. In November 2015, your affiant was hired by the Pasco Police Department as a Police Officer and has been so employed since then. During his employment at the Pasco

Police Department, your affiant has attended several hundred hours of training, both hands-on and practical experience in criminal investigations. While assigned to patrol, your affiant also served as a field-training officer (FTO), training new officers at the Pasco Police Department

2.  Currently, your affiant is assigned to the Drug Enforcement Administration ("DEA") Tri-Cities Task Force, beginning the assignment as a Detective and now as a Task Force Officer, since January of 2018. Since being assigned to the DEA Task Force, your affiant has been responsible for investigating violations of federal law including violations of the Controlled Substances Act. Your affiant is a United States "investigative or law enforcement officer" as set forth 18 U.S.C. § 2510(7), and your affiant is authorized by law to conduct investigations and make arrests for offenses delineated in 18 U.S.C. § 2516.

3.  During the course of your affiant's employment as a law enforcement officer, your affiant has participated in numerous criminal investigations and has gained knowledge and experience by working with other agents and TFO's. Your affiant has participated in Federal and State search warrants involving the seizure of controlled substances, to include Fentanyl pills, the seizure of records relating to the manufacturing and distribution of controlled substances, and other types of evidence documenting the activities of drug trafficking organizations and their members. Your affiant has utilized numerous

Affidavit of TFO Orth - 1

investigative techniques and resources and drawn upon on the experience, techniques, and resources he has gained in his employment as a law enforcement officer.

4.  The statements contained in this Affidavit are based in part on your affiant's training, experience, participation in and knowledge of this investigation, and as well as knowledge he learned from various other federal, state and local law enforcement agencies, special agents, task force officers, state and local law enforcement officers.  Since this Affidavit is being submitted solely for the purpose of establishing probable cause to support a criminal complaint and the issuance of an arrest warrant(s), your affiant has not included each and every fact known to him or others concerning this investigation.  Rather, your affiant has only set forth facts necessary to support this request.

## PROBABLE CAUSE

5.  On March 20, 2019, the Tri-Cities METRO Drug Task Force ("METRO") was concluding a buy/walk operation in Kennewick, WA.  After the operation concluded, at approximately 5:00pm, METRO Detective Michael Ramos observed a METRO Confidential Source[1] ("CS") at 539 N. Edison Avenue,

---

[1] The CS is cooperating with law enforcement in exchange for monetary consideration. The CS has no known felony convictions, but does have several prior misdemeanor convictions (none for dishonesty).  Prior to the CS working for monetary consideration, the CS worked for METRO as a CS under contract several times, working off felony charges each time.  The CS successfully completed the previous contracts with no known issues.  During the CS' prior contracts, the CS provided information that proved to be credible and

Affidavit of TFO Orth - 2

Kennewick, WA. Detective Ramos observed the CS enter a black Ford Taurus and conduct what appeared to Detective Ramos, based on his training and experience as a law enforcement officer, a hand-to-hand drug transaction with the occupant of the vehicle. Shortly thereafter, the Ford Taurus departed the area with the CS. Due to Detective Ramos's observations and his belief that the CS may have just conducted a drug transaction, which would be a violation of his/her contract, Detective Ramos advised additional members of METRO of the situation, and he followed the Ford vehicle.

6. At approximately 5:15pm, Detective Ramos observed the Ford enter the parking lot of the Winco grocery store in Kennewick, Washington. Detective Ramos lost sight of the Ford in the parking lot. Shortly thereafter, Detective Ramos observed the CS walking thru the parking lot of Winco. Detective Ramos observed the CS get on the Benton Franklin Transit bus. Detective Ramos followed the bus. Detective Ramos observed the CS exit the bus at the Albertson's grocery store in Kennewick, Washington. Kennewick Police Department K-9 Officer Isaac Merkl ran a wanted persons query on the CS and discovered that he/she had several outstanding warrants.

---

reliable. The CS violated his recent contract as noted below by engaging in drug trafficking. The CS was honest when contacted by Detectives, as noted herein. The CS' contract has now been terminated. The CS was booked on the CS' outstanding warrants. It is anticipated state charges related to this drug trafficking will be filed.

Affidavit of TFO Orth - 3

7. METRO surveillance units observed the CS at this location to see if he/she contacted anyone after exiting the bus. Surveillance units observed the CS walk south on Edison Street, and METRO Detectives contacted the CS at the corner of N. Edison Avenue and Hood Street in Kennewick, Washington. K9 Officer Merkl placed the CS into custody on the CS' outstanding warrants. A search of the CS' person incident to arrest was conducted and K9 Officer Merkl located a small baggie containing approximately 17 pills, which were recognized to be Fentanyl pills.

8. The CS provided a post-*Miranda* statement and advised Detective Ramos that the CS was meeting with his/her Fentanyl source of supply, who was currently en-route to deliver 50 Fentanyl pills to him/her. The CS told Detective Ramos that his/her supplier was with their (CS's supplier's) source of supply, who was in the area from Arizona, for the purpose of distributing Fentanyl. The CS told Detective Ramos that his female supplier of Fentanyl was Michelle MAGANA ("MAGANA"). METRO Detectives were already familiar with MAGANA based on other Fentanyl pills investigations. The CS gave Detective Ramos permission to access his/her cellular phone and showed Detective Ramos text messages involving the upcoming purchase of 50 Fentanyl tablets from MAGANA. At the direction of Detective Ramos, the CS texted the phone number the CS identified as belonging to MAGANA and arrangements were made to meet at the Albertson's parking lot in Kennewick, Washington to purchase 50 Fentanyl pills.

9. At approximately 6:20pm, METRO Detectives established surveillance in and around the Albertson's, in anticipation of MAGANA's arrival. Shortly thereafter, METRO surveillance units observed a Dodge Ram pick-up truck, bearing Texas license plate #LLP9561, enter the Alberton's parking lot. Surveillance units recognized the driver of the Dodge as MAGANA, based on previous investigations into the distribution of fentanyl pills and a known photograph of MAGANA. METRO units contacted the vehicle and detained MAGANA and the front seat passenger, who was identified as Roberto FLORES ("FLORES"). At approximately 6:30pm, METRO Detective Christopher Bennett applied for a telephonic search warrant for the Dodge pickup truck as well as the persons of FLORES and MAGANA. Benton/Franklin Superior Court Judge Joseph Burrows subsequently granted the search warrants.

10. METRO Detectives searched FLORES' person and located large amounts of U.S. Currency, and 2 small bags containing approximately 200 Fentanyl pills (identified by law enforcement based on training and experience), located in his pants pocket.

11. During the search of the vehicle, METRO Detectives located an aluminum can with a false bottom in the center console. Inside of the can, METRO Detectives located approximately 300 Fentanyl pills (identified by law enforcement based on training and experience). In the ash tray of the vehicle, METRO Detectives located an additional small bag, which contained approximately 100

additional Fentanyl pills (identified by law enforcement based on training and experience). In the rear seat of the vehicle, METRO Detectives located a pink plastic bag, which contained approximately four thousand ($4,000.00) dollars in U.S. currency. Additional U.S. currency in the wallet appearing to belong to MAGANA.

12.    FLORES and MAGANA were transported to the Kennewick Police Department for interview. After being provided his *Miranda* rights, FLORES declined to make a statement. After being provided her *Miranda* rights, MAGANA agreed to be interviewed. In summary, MAGANA advised that DEA Special Agent Kurt Mitchell that FLORES (who she knew as "Roberto"), was part of a set of individuals who would deliver Fentanyl pills to the Tri-Cities area from several states away. FLORES would drive to the Tri-Cities and distribute Fentanyl pills to multiple local distributors and MAGANA would drive him around while he made those drug transactions. MAGANA said that one of the other Fentanyl sources of supply introduced her FLORES. MAGANA said she began driving for FLORES about two to three months prior because she did not have very much money to buy Fentanyl pills since she was not working. MAGANA said that FLORES brought up a red can, which was full of Fentanyl pills, approximately one week prior. MAGANA further stated she had been with FLORES for almost a week, while he sold these Fentanyl pills. MAGANA said FLORES would not sell less than 10 Fentanyl pills at a time and had multiple customers.

Affidavit of TFO Orth - 6

13. Your affiant inspected the seized Fentanyl pills and noticed that they were stamped with the letter 'M' on one side and the number '30' on the other side. Due to your affiant's training and experience, he recognized these pills as being consistent with the others he has seized in previous Fentanyl pill investigations. No presumptive tests were conducted on the pills, due to the safety risks involved with the handling of Fentanyl.

## CONCLUSION

14. Based upon the above facts, your Affiant believes probable cause exists to charge Michelle MAGANA and Roberto FLORES with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1)(b)(1)(C).

_____
Thomas Orth
Task Force Officer
Drug Enforcement Administration

Sworn to telephonically and signed electronically (MKD)

~~SUBSCRIBED AND SWORN to before me~~ this ____21st____ day of March 2019.

_____
Mary Dimke
United States Magistrate Judge

Affidavit of TFO Orth - 7